UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MICHAEL L. M.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 21-CV-322-CDL |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is **affirmed**.

I.   **Legal Standards**

   A.   **Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

1

Judicial review of the Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

### B. Five-Step Agency Process

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. At step two, the Commissioner determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the Commissioner determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are

so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. 20 C.F.R. § 1520(a)(4)(v).

## II. Background and Procedural History

Plaintiff filed for a period of disability and disability insurance benefits under Title II of the Social Security Act (Act), and for supplemental security income under Title XVI of the Act, on September 9, 2019. (R. 15). Plaintiff alleged a disability onset date of January 17, 2019. *Id.* He alleged disability from heart issues resulting from a double bypass surgery, left side artery stenosis, prediabetes, chest pain, and congestive heart failure. (R. 142, 146). He did not allege disability from a mental impairment. (R. 18). Plaintiff was 46 years old on his alleged onset date. (R. 142, 146). He has a high school education. (R. 152, 193). Before his alleged disability, plaintiff worked as a restaurant chef, fast food cook, restaurant manager, retail stocker, and restaurant host/cleaning crew. (R. 178, 181, 189).

Plaintiff's application was denied on initial review and on reconsideration. (R. 15). Subsequently, plaintiff's claim was heard via telephone by an Administrative Law Judge

(ALJ) on March 29, 2021. (R. 15, 31). The March 29, 2021, hearing included testimony by plaintiff and a Vocational Expert (VE). (R. 31-69). On April 12, 2021, the ALJ issued an unfavorable decision denying disability benefits. (R. 15-30). Following the Appeals Council's denial, plaintiff timely filed a Complaint in this Court. Accordingly, the Court has jurisdiction to review the ALJ's April 12, 2021 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of January 7, 2019. (R. 17). At step two, the ALJ found that plaintiff suffers from the following severe impairments: coronary artery disease; status post coronary artery bypass x 2; congestive heart failure; hypertension; chronic obstructive pulmonary disease; stenosis of the left subclavian artery; status post arthroscopy of the left shoulder; osteoarthritis of the left shoulder; and degenerative disc disease. (R. 18).

At step three, the ALJ determined that plaintiff's impairments do not meet or medically equal the criteria for any Listing under 20 C.F.R. Part 404, Subpart P, Appendix 1 because plaintiff's medically determinable mental impairment of an adjustment disorder did not cause more than minimal limitations in the plaintiff's ability to perform basic mental work activities. (R. 18-19). Applying the required psychiatric review technique, the ALJ found that plaintiff has a mild impairment in each of the four "paragraph B" areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18-19; *see* 20 C.F.R. § 404 Subpt. P App'x 1).

The ALJ found that plaintiff has the residual functional capacity (RFC) to:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday (Light work is defined in 20 CFR 404.1567(b) and 416.967(b)) except no climbing ladders, ropes, and scaffolding; occasional climbing of ramps and stairs; and no reaching or working overhead with the left upper extremity. The work should have no more than a normal level of exposure to gases, fumes, noxious odors, pulmonary irritants, dust, or poor ventilation, where normal is the level of an office or commercial setting. There should be no exposure to extreme heat, cold, or humidity (defined as temperatures between 68 and 76 degrees Fahrenheit and humidity between 40 and 60%).

(R. 19-20).

The ALJ discussed the medical and other evidence in the record supporting the RFC determination, including physical treatment and mental health evaluations from August 2019 to September 2020. On August 19, 2019, plaintiff was diagnosed with hypertension, peripheral vascular disease, congestive heart failure, chronic obstructive pulmonary disease, and underwent coronary artery bypass grafting x 2. (R. 18). A May 29, 2020, MRI revealed that plaintiff suffered a partial tear of the supraspinatus tendon, SLAP tear, and osteoarthritis. *Id.* Further, MRIs conducted on June 17, 2020, and September 25, 2020, revealed that plaintiff also suffered from multi-level degenerative changes of the spine and degenerative disc disease. *Id.* Because of these physical impairments, the ALJ found that plaintiff's ability to perform basic work activities was "significantly limit[ed]." *Id.*

However, the ALJ found that plaintiff's mental impairments do not "significant[ly] impact on his daily activities/abilities and overall employability." (R. 18). The ALJ's decision also addressed the psychological opinion of Dr. Alyssa Rippy, PhD. *Id.* Dr. Rippy completed a psychological consultative evaluation dated January 3, 2020. *Id.* The mental

5

status examination showed plaintiff suffered from an adjustment disorder and had depressed mood, appropriate affect, and thought content was goal directed. *Id.* Recent and remote memory was intact, interpersonal skills were mildly impaired, and judgment was good. Dr. Rippy believed plaintiff would have mild issues coping with work-related stress and adapting to a workplace environment and mild issues with attention and sustained concentration and interacting with others, but Dr. Rippy did not give any specific mental health related work limitations. *Id*. In totality, the ALJ found that Dr. Rippy's opinion combined with the facts that plaintiff was not alleging disability due to mental impairment, was not taking medication for depression or anxiety, and did not present evidence that he sought treatment from a mental health professional, showed that plaintiff did not have any mental impairments that would cause more than a "minimal limitation" to basic mental work activities. *Id.*

At step four, the ALJ concluded that Plaintiff is unable to perform his past relevant work as actually or generally performed. (R. 23-24). At step five, citing the hearing testimony of the VE, the ALJ found that there are other jobs existing in significant numbers in the national economy that plaintiff can perform, including:

> *Marker*, light exertion, unskilled work, SVP 2, DOT Code #209.587-034) 129,000, with approximately 110,000 such jobs within the national economy;
>
> *Routing clerk*, light exertion, unskilled work, SVP 2, DOT Code #222.687-022, with approximately 104,000 such jobs within national economy;
>
> *Cashier II*, light exertion, unskilled work, SVP 2, DOT Code #211.462-010, with approximately 576,000 such jobs within the national economy.

6

>   ***Charge account clerk***, sedentary, unskilled work, SVP 2 , DOT
>   Code #205.367-014, with approximately 15,800 such jobs within the
>   national economy;
>
>   ***Telephone information clerk***, sedentary, unskilled work, SVP 2,
>   DOT Code #237.367-046, with approximately 12,000 such jobs
>   within the national economy;
>
>   ***Food and beverage order clerk***, sedentary, unskilled work, SPV 2
>   DOT Code #209.567-014, with approximately 21,000 such jobs
>   within the national economy.

(R. 24-25). Thus, the ALJ concluded at step five that plaintiff is not disabled. (R. 25).

## IV.   Discussion

Plaintiff argues that (1) the ALJ's erred at step two of the sequential evaluation process because he did not properly consider all of plaintiff's impairments and that (2) the ALJ failed to include appropriate limitations in plaintiff's RFC determination. Specifically, he argues that the ALJ did not consider plaintiff's diagnoses of major depressive disorder and chronic pain syndrome. Plaintiff further argues that his RFC assessment should have included a limitation of no reaching in all directions or handling or fingering on more than an occasional basis. The Commissioner argues that substantial evidence supports the ALJ's findings. The Court agrees with the Commissioner and affirms the ALJ's decision.

### A.   Step Two Analysis: Major Depressive Disorder and Chronic Pain Syndrome

Plaintiff contends that the ALJ erred at step two by failing to classify his major depressive disorder and chronic pain syndrome as severe. At step two of the evaluative sequence, the ALJ must determine whether plaintiff suffers from severe impairments. That is all that is required of the ALJ at step two. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th

7

Cir. 2007). Once an ALJ finds that a claimant has at least one severe impairment, a failure to designate others as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1521, 416.921; *see also* 20 C.F.R. §§ 404.1525(e), 416.945(e); *Smith v. Colvin*, 821 F.3d 1264, 1266-67 (10th Cir. 2016), *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987), *Brescia v. Astrue*, 287 F. App'x 626, 629 (10th Cir. 2008).

Further, the ALJ is not required to discuss every piece of evidence in the record; instead, the ALJ must discuss the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See* 20 C.F.R. § 416.921 ("[The ALJ] will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment."); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). In this context, plaintiff has failed to show that discussion of the major depressive disorder and chronic pain syndrome were needed at step two. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

On plaintiff's December 19, 2019, visit to the hospital, Dr. Elizabeth Nerbum, MD, diagnosed him with a moderate episode of major depressive disorder and prescribed

plaintiff with bupropion. (R. at 854-855, 885). Further, on July 15, 2020, Dr. Samuel Korbe, MD, administered to Plaintiff a PHQ-9 Questionnaire, which is a self-reported questionnaire used to gauge an individual's depression. (R. 973). Plaintiff scored a 15, which indicates moderately severe depression. *Id.* However, the record does not provide any further information besides the mere diagnosis of major depressive disorder. There is no information regarding its effect on plaintiff's functioning.

The ALJ's decision addressed plaintiff's depression. (R. 18-19). The ALJ noted that although Dr. Rippy, who performed plaintiff's January 2020 psychological evaluation, diagnosed plaintiff with an adjustment disorder, she concluded that it would only cause mild work-related issues. (R. 18, 812-815). Dr. Rippy recognized plaintiff's depression in her report multiple and assessed an "adjustment disorder, with depressed and anxious mood, severe, with panic attacks." (R. 814). Dr. Rippy opined that plaintiff would benefit from "specific therapeutic treatment for depression." (R. 815).

The ALJ also noted that two state agency psychological consultants, Stephanie Crall, Ph.D., and Laura Eckert, Ph.D., found that plaintiff experienced no more than a mild limitation in any of the "paragraph B" criteria and did not have a severe mental impairment despite plaintiff suffering from depression (R. 19, 146-148, 173-175). Likewise, regarding plaintiff's assertion that his chronic pain syndrome was ignored, the record is silent as to any limitations resulting from plaintiff's chronic pain syndrome; the record merely states that plaintiff has been diagnosed with this medical problem. (R. 95, 981, 990-991, 1202-1203). The ALJ's decision also detailed plaintiff's hearing testimony as to pain in his left

9

arm, back, knees, hips, and legs. (R. 20). The decision also repeatedly referenced Dr. Korbe's physical examination notes. (R. 22).

Here, based on the Court's review of the record, additional discussion of the major depressive disorder and chronic pain syndrome would add little, if any, value to the ALJ's analysis. There is nothing in the record that reflects functional limitations. Therefore, the ALJ's failure to note plaintiff's major depressive disorder and chronic pain syndrome was not reversible error.

### B.     RFC Assessment

Plaintiff contends the ALJ failed to adequately address the full impact of his left subclavian artery occlusion and his mental health in the RFC assessment. Plaintiff argues that his left arm injury precludes him from being able to perform the jobs the ALJ listed and that further RFC limitations are required, such as for reaching in all directions and handling and fingering on only an occasional basis.

Plaintiff relies on his repeated assertions that he is experiencing severe pain, numbness, tingling, and coldness in his left arm. However, a claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, "[t]he burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence [to show] the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Moreover, the focus of disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the

RFC is not error if the limitation is not supported by the medical record; *see also Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (affirming where, *inter alia*, claimant had not "directed [the court's] attention to any medical evidence that was disregarded" related to alleged functional limitation).

Here, no physician opined that plaintiff's left arm injury requires limitations beyond those included in the RFC determination. Plaintiff has not pointed to other substantial evidence that the ALJ ignored, nor has the Court's review of the record revealed such evidence. Moreover, substantial evidence supports the ALJ's determination that plaintiff's left arm injury did not require additional restrictions in the RFC.

While a May 31, 2019, physical examination on plaintiff showed diminished pulses in the left arm and delayed capillary refill with decreased sensation in the fingertips, the plaintiff still had normal strength. (R. 21). Plaintiff was hospitalized on August 19, 2019, claiming, among other things, tingling and numbness in the left hand. *Id.* Another physical examination showed the left hand had no palpable pulse and that the left hand was cooler to touch than the right. *Id.* Testing showed peripheral arterial disease of the left subclavian artery. *Id.* After a coronary artery bypass grafting x2, plaintiff gradually improved and was discharged, with diagnosis of hypertension, congestive heart failure, chronic obstructive pulmonary disease, stenosis of the left subclavian artery, and pulmonary edema. *Id.* A September 11, 2019, physical examination showed good range of motion and reasonable strength in the extremities, while a November 19, 2019, physical examination showed no palpable pulses in the left upper extremity and faint pulses at the wrist. *Id.* A May 11, 2020, MRI revealed a partial tear of the supraspinatus tendon, SLAP tear, and osteoarthritis. (R.

22). A subsequent physical examination demonstrated tenderness in the AC joint and biceps tendon, decreased rotator cuff strength with weakness. *Id.*

On May 29, 2020, the claimant underwent arthroscopy of the left shoulder for rotator cuff repair and SLAP repair. *Id.* On September 25, 2020, the plaintiff had fallen in the shower and was back in a sling for four weeks. *Id.* On December 7, 2020, an MRI of the shoulder revealed a humerus fracture and postoperative changes. *Id.* Nonoperative treatment was recommended, and plaintiff's range of motion in his left shoulder improved due to physical therapy. *Id.* Therefore, despite plaintiff's contentions that he is unable to use his left arm, the record shows that the arm has normal strength and some range of motion. As such, substantial evidence supports the RFC determination.

Plaintiff also contends that the RFC should have included a mental limitation. However, as discussed above in Part IV.A, Dr. Rippy concluded that plaintiff only had mild limitations in each of the four paragraph B criteria, and this conclusion was further supported by the opinions of Dr. Crall and Dr. Eckert, who concluded that plaintiff had mild limitations in these areas and a non-severe mental impairment. (R. 18-19, 146-148, 173-175). Plaintiff argues that the ALJ should have accounted for these mild limitations in the RFC determination, but the Tenth Circuit has not adopted such a rule. *See Beasley v. Colvin*, 520 Fed. App'x 748, 754-55 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in [plaintiff's] RFC based solely on the finding that she had moderate difficulties in social functioning . . . ."). As the ALJ correctly pointed out, "[t]he limitations identified in the "paragraph B" criteria are not a residual functional

capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (R. 19).

As such, more than a scintilla of evidence supports the mental RFC determination.[1] Furthermore, as set forth above, the ALJ provided good reasons for discounting plaintiff's subjective reports regarding his left arm injury.

## V. Conclusion

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

**SO ORDERED** this 30th day of September, 2022.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge

---

[1] Plaintiff further argues that the ALJ erred in failing to consider the full impact of plaintiff's subclavian artery occlusion in the hypothetical presented to the VE. However, the hypothetical need only reflect the limitations found to exist by the ALJ. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record"). Accordingly, this argument is rejected.